GENESEE MERCHANTS BANK & TRUST COMPANY v TUCKER
MOTOR SALES

EAGLE CHRYSLER-DODGE SALES, INC v GENESEE
MERCHANTS BANK & TRUST COMPANY

Docket Nos. 71785, 72615. Submitted March 6, 1984, at Lansing.—
Decided June 3, 1985. Leave to appeal applied for.

Genesee Merchants Bank & Trust Company had a floor-plan
agreement with Fenton Chrysler-Plymouth-Dodge, a retail au-
tomobile dealership. Genesee Merchants held a floating lien on
all personal property of Fenton Chrysler presently owned or
thereafter acquired. Fenton purchased automobiles from
Tucker Motor Sales and Eagle Chrysler-Dodge Sales, Inc., pay-
ing by check. The checks were dishonored. Genesee Merchants
discovered a breach of the floor-plan agreement and seized
Fenton's inventory in accordance with the floor-plan agree-
ment. Tucker Sales later obtained possession of the cars for
which it had not been paid. Genesee Merchants brought an
action in the Genesee Circuit Court for return of the cars. The
court, Judith Fullerton, J., granted summary judgment for the
bank. Tucker Sales appealed (Docket No. 71785). Eagle Sales
brought an action against Genesee Merchants in the Genesee
Circuit Court for return of the cars sold to Fenton for which it
had not been paid. The court, Thomas Yeotis, J., granted
possession pending judgment to Eagle Sales and denied the
bank's motion for summary judgment. The bank appealed

REFERENCES FOR POINTS IN HEADNOTES

[1] 67A Am Jur 2d, Sales § 1004 et seq.
   Construction and effect of UCC Article 2, dealing with sales. 17
   ALR3d 1010.
[2, 3, 5] 15A Am Jur 2d, Commercial Code § 4.
   69 Am Jur 2d, Secured Transactions § 476 et seq.
   Construction and effect of UCC Art 9, dealing with secured transac-
   tions, sales of accounts, contract rights, and chattel paper. 30
   ALR3d 9.
[4, 5] 67 Am Jur 2d, Sales § 21 et seq.
   69 Am Jur 2d, Secured Transactions § 286 et seq.
   What constitutes a transaction, a contract for sale, or a sale within
   scope of UCC Article 2. 4 ALR4th 85.

(Docket No. 72615). The appeals were consolidated by the Court of Appeals. *Held:*

One who in good faith acquires a lien on goods as security for an antecedent debt is a good faith purchaser for value under the Uniform Commercial Code. A creditor who in good faith acquires a lien on goods presently owned or thereafter acquired as security for an antecedent debt has priority over a defrauded subsequent cash seller seeking reclamation.

Docket no. 71785 affirmed and docket no. 72615 reversed.

CYNAR, P.J., dissented. He would hold that a creditor who in good faith obtains a lien upon goods as security for an antecedent debt is not a good faith purchaser for value as against a defrauded cash seller seeking reclamation and does not have a priority over the reclamation of the goods by the seller.

## OPINION OF THE COURT

1. SALES — REMEDIES — RECLAMATION — UNIFORM COMMERCIAL CODE.

   There is in the Uniform Commercial Code an implicit right of a seller to reclamation of goods sold to a cash buyer when the seller has not been paid (MCL 440.2507, 440.2511[3]; MSA 19.2507, 19.2511[3]).

2. SECURED TRANSACTIONS — PURCHASER — UNIFORM COMMERCIAL CODE.

   One who in good faith acquires a lien on goods as security for an antecedent debt is a good faith purchaser for value under the Uniform Commercial Code (MCL 440.1201, subds 32 and 44; MSA 19.1201, subds 32 and 44).

3. SECURED TRANSACTIONS — PRIORITIES — PURCHASER — LIEN CREDITOR — UNIFORM COMMERCIAL CODE.

   A creditor who in good faith acquires a lien on goods presently owned or thereafter acquired as security for an antecedent debt has priority over a defrauded subsequent cash seller seeking reclamation (MCL 440.2403[1], 440.2702[3]; MSA 19.2403[1], 19.2702[3]).

4. SALES — GOOD FAITH — SECURED TRANSACTIONS — UNIFORM COMMERCIAL CODE.

   Good faith in the case of a merchant means honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade (MCL 440.2103; MSA 19.2103).

DISSENT BY CYNAR, P.J.

5. SECURED TRANSACTIONS — PRIORITIES — SALES — PURCHASER —
LIEN CREDITOR — UNIFORM COMMERCIAL CODE.

A creditor who in good faith obtains a lien upon goods presently
owned or thereafter acquired as security for an antecedent debt
is not a good faith purchaser for value as against a defrauded
subsequent cash seller of some of the goods seeking reclamation
and does not have a priority over the reclamation of the goods
by the seller (MCL 440.2507[2], 440.2702[2]; MSA 19.2507[2],
19.2702[2]).

*Abbott, Nicholson, Quilter, Esshaki & Young-blood, P.C.* (by *Donald E. Conley* and *Carl F. Jarboe*), for Eagle Chrysler-Dodge Sales, Inc.

*Neithercut, Klapp, Shegos & Dillard* (by *James C. Dillard* and *Kittredge R. Klapp*), for Genesee Merchants Bank & Trust Company.

*Shulaw, Bowne & Omer, P.C.* (by *Richard A. Shulaw* and *Robin L. Omer*), for Tucker Motor Sales.

Before: CYNAR, P.J., and R. B. BURNS and R. L. TAHVONEN,* JJ.

R. L. TAHVONEN, J. Under the Uniform Commercial Code is an unpaid cash seller's right to reclaim goods from the buyer superior or subordinate to the floating lien of the buyer's secured creditor in the same goods?

In docket no. 71785, Genesee County Circuit Judge Judith Fullerton concluded that the lien was superior and entered summary judgment for the secured creditor. In docket no. 72615, Genesee County Circuit Judge Thomas Yeotis concluded that the right to reclaim was superior and entered judgment for the seller. We conclude that the lien is superior and therefore affirm in docket no. 71785 and reverse in docket no. 72615.

* Circuit judge, sitting on the Court of Appeals by assignment.

These consolidated appeals arise out of the financial demise of Fenton Chrysler-Plymouth-Dodge, a retail automobile dealership. In both cases, a dispute arose between other car dealerships which sought to reclaim new automobiles purchased from them by Fenton with dishonored checks and Genesee Merchants Bank & Trust, which "floor-planned" Fenton.

In docket no. 71785, the parties are Fenton, Genesee Bank and Tucker Motor Sales. The essentially undisputed facts indicate that, since 1980, the bank has financed Fenton's acquisition of new cars through a floor-plan agreement. To secure repayment of sums owed it by Fenton, the bank held a "floating lien" in personal property which Fenton "now has or owned or hereafter acquired". On October 20, 1982, Tucker (also a new car dealer) sold and delivered two cars to Fenton in exchange for payment in full by check. On October 27, the checks were dishonored and Tucker demanded immediate payment or return of the cars. On the same day, bank employees discovered that Fenton was "out of trust", i.e., cars were not in inventory for which payment had not been received by the bank. On October 28, the bank seized Fenton's entire automobile inventory in accordance with the provisions of the floor-plan agreement. On October 29, Tucker took possession of the two automobiles it had sold to Fenton on October 20. On November 5, the bank filed a claim and delivery action against Tucker in Genesee County Circuit Court. The bank moved promptly for possession pending judgment, GCR 1963, 757.5, or summary judgment, GCR 1963, 117.2(3). In an opinion dated May 17, 1983, Judge Fullerton granted summary judgment in favor of the bank finding that its lien was superior to any reclama-

tion rights held by Tucker. From that judgment, Tucker appeals as of right.

In docket no. 72615, the involved parties are Fenton, Genesee Bank and Eagle Chrysler-Dodge Sales, Inc.

On October 20, 1982, Eagle sold six automobiles to Fenton and was paid by check. The Fenton checks were dishonored and, on October 29, Eagle demanded immediate payment or return of the cars. Much to Eagle's dismay, all of Fenton's cars had been seized by the bank the day before. On November 5, Eagle filed a complaint in Genesee County Circuit Court, Count V of which was a claim and delivery action against the bank. The bank moved for summary judgment, GCR 1963, 117.2(3), and claimed priority as secured creditor under article nine of the UCC. Eagle moved for possession pending judgment, claiming that as a defrauded cash seller its right to reclaim was superior to the bank's security interest. By opinion dated March 16, 1983, Judge Yeotis granted Eagle's motion for possession and denied the bank's motion for summary judgment. A corresponding final judgment was entered on July 5, 1983. From that judgment, the bank appeals as of right.

The conflicting trial court opinions before us are thoughtful and considered judgments as to which of two innocent parties should bear a loss caused by neither. The bank as secured creditor and the car dealers as aggrieved sellers each offer cogent policy arguments to buttress their claims for a result that accommodates their more pedestrian financial interests. However, we must be primarily guided by the Uniform Commercial Code[1] which represents a legislative expression of the balance struck among competing commercial interests, expectations and values.

[1] MCL 440.1101 *et seq.;* MSA 19.1101 *et seq.*

Part 7 of Article 2 of the Uniform Commercial
Code[2] addresses remedies available to buyers and
sellers in connection with the breach of a contract
for sale. Section 2-702(2) of the UCC[3] grants to an
unpaid seller the right to reclaim goods when the
buyer has received the goods *on credit* while insol-
vent. The UCC does not explicitly provide a recla-
mation right for *cash* sellers. Nonetheless, Tucker
and Eagle, the sellers here, assert that a cash
seller's right of reclamation is implicit in UCC 2-
507[4] and UCC 2-511(3).[5] Although not without its
critics,[6] this view of the code has been adopted by
most courts having occasion to consider the ques-
tion. See *In re Wathen's Elevators, Inc,* 32 BR 912,
918 (WD Ky, 1983), and the cases cited therein. We
agree that a fair reading of the code establishes an
implicit right of reclamation in favor of defrauded
cash sellers.

Given the existence of such a right, the nar-
rower question becomes its fate when in conflict

[2] MCL 440.2701 *et seq.;* MSA 19.2701 *et seq.*

[3] MCL 440.2702(2); MSA 19.2702(2), which provides:

"Where the seller discovers that the buyer has received goods on
credit while insolvent he may reclaim the goods upon demand made
within 10 days after the receipt, but if misrepresentation of solvency
has been made to the particular seller in writing within 3 months
before delivery the 10 day limitation does not apply. Except as
provided in this subsection the seller may not base a right to reclaim
goods on the buyer's fraudulent or innocent misrepresentation of
solvency or of intent to pay."

[4] MCL 440.2507; MSA 19.2507, which provides:

"Tender of delivery is a condition to the buyer's duty to accept the
goods and, unless otherwise agreed, to his duty to pay for them.
Tender entitled the seller to acceptance of the goods and to payment
according to the contract."

[5] MCL 440.2511(3); MSA 19.2511(3), which provides:

"Subject to the provisions of this act on the effect of an instrument
on an obligation (section 3802), payment by check is conditional and is
defeated as between the parties by dishonor of the check on due
presentment."

[6] See Judge Godbold's opinion in *In the Matter of Samuels & Co,
Inc,* 526 F2d 1238, 1244 (CA 5, 1976), terming the cash seller's right to
reclaim "judicially-confected".

with a properly perfected pre-existing article nine security interest such as that possessed by Genesee Bank in this case.

UCC 2-702(3)[7] provides:

"The seller's right to reclaim under subsection (2) is subject to the rights of a buyer in ordinary course or other good faith purchaser or lien creditor under this article (section 2403). Successful reclamation of goods excludes all other remedies with respect to them."

The very code provision that implicitly gives rise to the seller's right to reclaim (in subsection 2) subordinates that right to the rights of a "good faith purchaser or lien creditor" (in subsection 3).

Moreover, UCC 2-403(1)[8] provides that a person with voidable title "has power to transfer a good title to a good faith purchaser for value". That code section goes on to provide that this power to transfer greater rights than those in fact acquired exists even though "delivery was in exchange for a check which is later dishonored". UCC 2-403(1)(b).[9] The term "purchaser" includes not only those who take by sale but also those who, like the bank here, take by lien, UCC 1-201(32).[10] In addition, the antecedent indebtedness of Fenton to the bank was "value" sufficient to render the bank a good faith purchaser *for value.* UCC 1-201(44).[11] In short, if the bank acted in good faith, its rights in the collateral are superior to those of the reclaiming cash sellers under both UCC 2-702(3)[12] and UCC 2-403(1).[13]

---

[7] MCL 440.2702(3); MSA 19.2702(3).

[8] MCL 440.2403(1); MSA 19.2403(1).

[9] MCL 440.2403(1)(b); MSA 19.2403(1)(b).

[10] MCL 440.1201(32); MSA 19.1201(32).

[11] MCL 440.1201(44); MSA 19.1201(44).

[12] MCL 440.2702(3); MSA 19.2702(3).

[13] MCL 440.2403(1); MSA 19.2403(1).

The sellers argue that summary judgment should not have been granted in the bank's favor on the "good faith" issue. Both sellers assert that the bank did not act in good faith because the bank knew or should have known of the sellers' interests and took possession of the collateral knowing of Fenton's impending financial demise.

The UCC defines "good faith" as "honesty in fact in the conduct or transaction concerned". UCC 1-201(19).[14] For purposes of article two, the code defines "good faith" as "honesty in fact and the observance of reasonable commercial standards of fair dealing * * *". UCC 2-103.[15]

Even if the sellers' factual claims are true, the bank acted in good faith. The mere fact that the bank may have known of the sellers' claims does not constitute bad faith. The assumed existence of third party claims is the principal reason for perfecting nonpossessory article nine security interests. The basis for such interests certainly cannot establish their invalidity.

Moreover, repossession of the vehicles on the eve of Fenton's collapse does not speak of bad faith but of commercial vigilence.

We conclude that the cash sellers had a right to reclaim under UCC 2-702(2)[16] because Fenton's right to retain the vehicles *as against the sellers* was conditional upon payment, UCC 2-507(2),[17] which was not made. However, this right to reclaim was subordinate to the pre-existing and properly perfected article nine security interest of the bank, a good faith purchaser for value, UCC 2-403(1)[18] and UCC 2-702(3).[19]

---

[14] MCL 440.1201(19); MSA 19.1201(19).

[15] MCL 440.2103; MSA 19.2103.

[16] MCL 440.2702(2); MSA 19.2702(2).

[17] MCL 440.2507(2); MSA 19.2507(2).

[18] MCL 440.2403(1); MSA 19.2403(1).

Accordingly, we affirm in docket no. 71785 and reverse in docket no. 72615. The bank may tax its costs in each case.

R. B. BURNS, J., concurred.

CYNAR, P.J. *(dissenting).* I dissent.

The circumstances of this case warrant consideration of the other side of the controversy revolving around the interplay between UCC 2-702(2), 2-507(2) and a properly perfected security interest. The crux of the matter is whether or not the seller's right to reclaim is subordinate to a perfected security interest. As the excellent majority opinion indicates, this continues to be an area of considerable discussion. With this in mind I would like to draw further attention to the controversy and note that a different result has been reached in other cases. Especially noteworthy in this instance is *In re Emery Corp,* 38 BR 489; 38 UCC Rep 834 (Bankr Ed Pa, 1984). In *Emery* the court noted that the definitions of purchase and purchaser in UCC 1-201 were not intended to apply to this situation. The court then reasoned that, if a security interest holder is not a purchaser as to a reclaiming seller under UCC 2-702, the seller could reclaim the goods.

A case like this one presents difficult problems and I appreciate the majority's efforts in attempting to resolve the dispute between innocent parties as to who should bear a loss caused through the fault of neither. However, I believe the result reached by the *Emery* court would be the better one in this instance.

---

[19] MCL 440.2702(3); MSA 19.2702(3).