The COOPERATIVE FINANCE ASSOCIATION, INC., a Kansas corporation, successor in interest to Farmland Financial Services Company, Plaintiff–Appellee,

v.

B & J CATTLE CO. and Brett Bybee, Defendants–Appellants.

No. 96CA0236.

Colorado Court of Appeals, Div. V.

April 17, 1997.

Kerr Friedrich Brosseau & Bartlett, LLC, John A. O'Brien, Denver, for Plaintiff–Appellee.

Epperson, McClary, Zorn & McClary, Edward L. Zorn, Fort Morgan, for Defendants–Appellants.

Opinion by Judge ROY.

Defendants, B & J Cattle Co. and its agent, Brett Bybee, (collectively B & J) appeal a summary judgment in favor of plaintiff, The Cooperative Finance Association, Inc., (Cooperative). We affirm.

Cooperative is the holder of a promissory note given by MRC–Sheaf Corporation (MRC), which was historically involved in the feeding and finishing of cattle. The promissory note is secured by, among other things, all of MRC's livestock "whether now owned or hereafter acquired by [MRC] and wherever located."

The security interest of Cooperative was evidenced by a security agreement and perfected by the filing of financing statements with the Colorado Secretary of State and the Morgan County Clerk and Recorder at different times by both Cooperative and its predecessor in interest. The promissory note matured and MRC defaulted.

Cooperative then commenced this action against MRC in replevin. The trial court appointed a receiver, designated collateral,

and entered a temporary order to preserve the collateral.

MRC then purchased 203 holstein heifers from B & J for immediate resale to an identified buyer. MRC and B & J intended a cash sale with the purchase price to be wired immediately following, and from the proceeds of, the sale to MRC's buyer.

The heifers were delivered by B & J to a feedlot near Fort Morgan, Colorado, designated by MRC and owned by a third party. MRC acknowledged receipt upon delivery. MRC did not complete the sale to its buyer and did not wire payment to B & J as agreed. Subsequently, and at the insistence of B & J, MRC issued two checks to cover the purchase price but stopped payment on both. B & J immediately ordered the feedlot operator to maintain possession of the heifers for the benefit of B & J and against the interest of MRC. The time lapse between the delivery of the heifers and the dishonor of the checks for the purchase price was 13 days.

Cooperative, upon discovery of the heifers, amended its replevin claim to include the heifers and named B & J as a defendant. The trial court entered an order preserving the 203 heifers pending resolution of the case and the parties stipulated to their sale with the proceeds deposited in an interest bearing account. The litigation thence became a dispute over the proceeds from the sale of the heifers.

The parties filed cross-motions for summary judgment, each alleging there was no issue as to any material fact. The trial court found that Cooperative held a valid perfected security interest in all of MRC's livestock pursuant to § 4–9–103, C.R.S. (1992 Repl. Vol. 2), which, by virtue of an after-acquired property clause and § 4–9–204, C.R.S. (1992 Repl.Vol. 2), included the 203 heifers. The court also found B & J was a cash-seller with a right to reclaim pursuant to § 4–2–507, C.R.S. (1992 Repl.Vol. 2).

Relying on *Guy Martin Buick, Inc. v. Colorado Springs National Bank,* 184 Colo. 166, 519 P.2d 354 (1974), the trial court concluded Cooperative's perfected security interest had priority over B & J's right to reclaim

the heifers, granted Cooperative's motion for summary judgment, and awarded it the proceeds from their sale.

## I.

We first address B & J's contention that the trial court erred in granting summary judgment as there were genuine issues of material fact requiring resolution at trial. We disagree.

Our review of a summary judgment is *de novo. Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board,* 901 P.2d 1251 (Colo.1995). Summary judgment is a drastic remedy and is never warranted except on a clear showing that there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Graven v. Vail Associates, Inc.,* 909 P.2d 514 (Colo. 1995).

A "material fact" is one that affects the outcome of the litigation. The determination of whether there exists a genuine issue as to any material fact is a question of law. *Sender v. Powell,* 902 P.2d 947 (Colo. App.1995).

In their respective motions for summary judgment, each of the parties claimed there was no dispute as to any material fact and that they were entitled to judgment as a matter of law. The parties disagreed only as to the legal consequence of the undisputed facts. We conclude there is no issue as to any material fact.

## A.

We reject B & J's assertion that there was a genuine issue of material fact as to possession of the heifers while they remained in the Fort Morgan feedlot.

The parties agree that B & J entered into a cash sale transaction with MRC in which B & J agreed to ship the cattle to MRC and MRC agreed to pay B & J from the proceeds of an immediate sale. Both parties agree that they did not intend title to the heifers to pass to MRC until actual payment was received by B & J. In addition, MRC made all of the arrangements for the care and feeding

of the heifers at the Fort Morgan feedlot prior to the delivery.

B & J argues that the trial court impermissibly concluded that possession of the heifers passed to MRC when they arrived at the Fort Morgan feedlot. The trial court, however, properly recognized the undisputed understanding regarding passage of title upon payment and concluded that title did not automatically pass to MRC upon delivery to the feedlot. Section 4–2–401(1), C.R.S. (1992 Repl.Vol. 2) and § 4–1–201(37), C.R.S. (1992 Repl.Vol. 2).

The trial court also concluded that while § 4–2–401(1) allows a seller to reserve title following delivery, such a reservation is in the nature of a lien, the perfection and priority of which is subject to the provisions of Article 9 of the Uniform Commercial Code governing secured transactions. *See* § 4–9–101, et seq., C.R.S. (1992 Repl.Vol. 2).

B & J also argues there was evidence to support the conclusion the heifers were not sold, but consigned, to MRC. We are unable to find any such evidence which would, in any event, be contrary to the express intent and understanding of B & J's agent. In our view, B & J does not disagree with the underlying operative facts; it merely finds fault with the trial court's conclusions as to the legal implications of those facts. B & J's agreement and judicial admission that the transaction constituted a cash sale is totally inconsistent with a consignment. Section 4–2–326, C.R.S. (1992 Repl.Vol. 2).

## B.

We also reject B & J's contention that the trial court impermissibly resolved a disputed issue of fact in determining that the heifers were "inventory" as opposed to "farm products."

■ Classification of goods under § 4–9–109, C.R.S. (1992 Repl.Vol. 2) is a question of fact and includes consideration of the purposes for which the debtor intended to use the goods. *Morgan County Feeders, Inc. v. McCormick*, 836 P.2d 1051 (Colo.App.1992). Thus, as an example, cattle used for recreational cattle drives can properly be classified as equipment. *First Colorado Bank &*

*Trust v. Plantation Inn, Ltd.*, 767 P.2d 812 (Colo.App.1988).

Pursuant to § 4–9–109(3), C.R.S. (1992 Repl.Vol. 2), "goods" are:

'Farm Products' if they are crops or livestock or supplies used or produced in farming operations or if they are products of crops or livestock in their unmanufactured states ... and if they are in the possession of a debtor engaged in raising, fattening, grazing, or other farming operations. If goods are farm products they are neither equipment nor inventory.

"Farming operations" is not a defined term; however, "livestock" is a defined term. Section 4–1–201(23.5), C.R.S. (1992 Repl.Vol. 2).

Pursuant to § 4–9–109(4), C.R.S. (1992 Repl.Vol. 2), "goods" are:

'Inventory' if they are held by a person who holds them for sale or lease or to be furnished under contracts of service or if he has so furnished them, or if they are raw materials, work in process, or materials used or consumed in a business. Inventory of a person is not to be classified as his equipment.

MRC had historically been in the business of "raising, fattening, [and] grazing" cattle, a farming operation, in both Iowa and Colorado. The trial court concluded, however, that MRC was not in that business at the time it purchased the 203 heifers from B & J and, therefore, such cattle were inventory. The trial court based its conclusion, in part, on the undisputed fact that MRC was no longer equipped and lacked the facilities to raise, fatten, or graze livestock.

■ B & J here argues the trial court based its conclusion on inadmissible hearsay evidence. Cooperative submitted the deposition of B & J's agent who testified that he understood, based on the statements of MRC's agent, that there was an identified buyer for an immediate purchase of the heifers and B & J would be paid from the proceeds of the sale. B & J's agent further testified that: "We made an arrangement that the cattle would [not] go to another party until he [MRC's agent] got his money gathered up from his customer and paid B &

J for the cattle and the checks were cleared before he got the cattle."

While the statements of MRC's agent through B & J's agent may be inadmissible hearsay for proving MRC's intent, they are clearly admissible as to B & J's knowledge and understanding of the transaction. The quoted testimony is, indeed, a statement of the contract as B & J, or its agent, understood it. B & J did not point to, nor do we find, evidence in the record to support any other intention on the part of MRC regarding its purchase of the heifers.

Therefore, the trial court did not impermissibly resolve any issue in classifying the heifers as inventory on the basis of inadmissible hearsay evidence.

## II.

B & J also contends the trial court erred in holding that its right to reclaim the heifers as an unpaid cash-seller did not take priority over Cooperative's perfected security interest. We disagree.

In determining the priorities of the parties' interests in the heifers, we must first identify the interests held by each party. *See Guy Martin Buick, Inc. v. Colorado Springs National Bank, supra.*

### A.

An unpaid seller in a cash sale has the right to reclaim the goods pursuant to § 4–2–507(2), C.R.S. (1992 Repl.Vol. 2) which provides:

> Where payment is due and demanded on the delivery to the buyer of goods or documents of title, his right as against the seller to retain or dispose of them is conditional upon his making the payment due.

Official Comment 3 to § 4–2–507(2) explains:

> Subsection (2) deals with the effect of a conditional delivery by the seller and in such a situation makes the buyer's 'right as against the seller' conditional upon payment. These words are used as words of limitation to conform with the policy set forth in the bona fide purchase sections of this Article. Should the seller after making such a conditional delivery fail to follow

up his rights, the condition is waived. *This subsection (2) codifies the cash seller's right of reclamation which is in the nature of a lien.* There is no specific time limit for a cash seller to exercise the right of reclamation. However, the right will be defeated by delay causing prejudice to the buyer, waiver, estoppel or ratification of the buyer's right to retain possession. Common law rules and precedents governing such principles are applicable (Section 1–103). If third parties are involved, Section 2–403(1) protects good faith purchasers. (emphasis added)

B & J, as an unpaid cash-seller, had a right to reclaim the heifers pursuant to § 4–2–507(2) which "is in the nature of a lien." B & J does not have, and does not claim to have, a purchase money security interest as in § 4–9–107, C.R.S (1982 Repl.Vol. 2), the priority of which is established by § 4–9–312, C.R.S. (1992 Repl.Vol. 2).

### B.

■ Cooperative has a perfected security interest. Pursuant to § 4–9–203, C.R.S. (1992 Repl.Vol. 2), a security interest in collateral becomes enforceable against the debtor and third parties when the debtor has signed a security agreement describing the collateral, value has been given, and the debtor has rights in the collateral. The security agreement may include after-acquired property. Section 4–9–204, C.R.S. (1992 Repl.Vol. 2). Perfection of the security interest in this instance requires the filing of a financing statement. Section 4–9–302, C.R.S. (1992 Repl.Vol. 2).

Pursuant to § 4–2–401, C.R.S. (1992 Repl. Vol. 2), title to goods passes under the following conditions:

> (1) Title to goods cannot pass under a contract for sale prior to their identification to the contract (section 4–2–501), and unless otherwise explicitly agreed, the buyer acquires by their identification a special property as limited by this title. Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. Subject

to these provisions and to the provisions of the article on secured transactions (article 9 of this title), title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.

(2) Unless otherwise explicitly agreed, title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by the bill of lading.

Title to livestock normally is transferred by bill of sale pursuant to § 35–54–101, et seq., C.R.S. (1995 Repl.Vol. 14). However, when no bill of sale is issued, title transfers pursuant to the Uniform Commercial Code. *Cugnini v. Reynolds Cattle Co.,* 687 P.2d 962 (Colo.1984); *Rochester Ranch Co. v. Stubblefield,* 640 P.2d 267 (Colo.App.1981). Here, no bill of sale issued.

The heifers were identified to the contract for sale when they were loaded on the trucks for delivery to MRC. *See North Platte State Bank v. Production Credit Association of North Platte,* 189 Neb. 44, 200 N.W.2d 1 (1972) (parties agreed payment for cattle shipment would be made after delivery; court held title passed pursuant to Uniform Commercial Code upon physical delivery).

While B & J retained a right of reclamation pursuant to § 4–2–401(2), title to the heifers passed to MRC upon B & J's full performance, *i.e.,* delivery. *Colorado State Bank v. Hoffner,* 701 P.2d 151 (Colo.App. 1985). Upon delivery, MRC had rights in the heifers to which Cooperative's security interest could, and therefore did, attach.

As Cooperative had a valid perfected security interest in all of MRC's livestock, including after-acquired livestock, Cooperative's security interest attached at delivery.

### C.

■ With respect to the priority of the respective interests, the trial court relied on *Guy Martin Buick, Inc. v. Colorado Springs National Bank, supra,* in concluding that Cooperative's perfected security interest prevailed over B & J's right to reclaim the goods as an unpaid cash-seller. While *Guy Martin Buick* is clearly distinguishable, it is instructive and consistent with the rule that a perfected security interest resulting from an after-acquired property clause prevails over the retained interest of an unpaid cash-seller. *See In re Samuels & Co.,* 526 F.2d 1238 (5th Cir.1976), *reversing* 510 F.2d 139 (5th Cir. 1975); *B & P Lumber Co. v. First National Bank,* 147 Ga.App. 762, 250 S.E.2d 505 (1978); *Genesee Merchants Bank & Trust Co. v. Tucker Motor Sales,* 143 Mich.App. 339, 372 N.W.2d 546 (1985); *Kennett–Murray & Co. v. Pawnee National Bank,* 598 P.2d 274 (Okla.App.1979); *Villa v. Alvarado State Bank,* 611 S.W.2d 483 (Tex.Civ.App. 1981); R. Anderson, *Uniform Commercial Code* § 9–312:67 (1994). *See also O'Brien v. Chandler,* 107 N.M. 797, 765 P.2d 1165 (1988) (where cash-purchaser took delivery of cattle and then obtained a bank loan using the cattle as collateral, the bank's perfected security interest prevailed over the interest of the unpaid cash-seller).

B & J would have us adopt the rationale of, and the result reached by, the majority of the three judge panel in *In re Samuels & Co., supra.* As indicated above, this rationale and result were ultimately rejected by the circuit court, *en banc,* and the original dissent was adopted as the opinion of the full court. Therefore, we rely, in part, on the final opinion and decline the invitation to do otherwise.

B & J also relies on *Citizens Bank v. Taggart,* 143 Cal.App.3d 318, 191 Cal.Rptr. 729 (1983) for the proposition that the interest of the unpaid cash-seller prevails over a perfected security interest in after-acquired goods because the voidable interest of the cash-purchaser is insufficient for attachment of the perfected security interest. This analysis was part of the rationale of the three judge panel in *In re Samuels & Co., supra,* which was ultimately rejected by the full court. We decline to adopt it.

MRC's interest in the livestock was sufficient such that it could convey title to a good-faith purchaser free of any retained interest

of B & J, *see* § 4–2–403(1), C.R.S. (1992 Repl.Vol. 2), unless a retained interest of B & J were conspicuously noted on the brand inspection certificate or memorandum. *See* § 4–2–403(1.5), C.R.S. (1992 Repl.Vol. 2); *Cugnini v. Reynolds Cattle Co., supra.* No such notation appears in this record.

We recognize that Cooperative may, in essence, realize a windfall at the expense of B & J. We note, however, that the secured creditor with an after-acquired property clause is frequently a line-of-credit lending institution which can, and sometimes does, elect without notice to terminate advances on the line of credit and then dishonors drafts issued in reliance on the line of credit. In that instance, the secured creditor may well enhance its secured position at the expense of the unpaid cash-seller. Even under these circumstances, however, the secured party prevails. *See In re Samuels & Co., supra; Genesee Merchants Bank & Trust Co. v. Tucker Motor Sales, supra; Villa v. Alvarado State Bank, supra. But cf. Monsanto Co. v. Walter E. Heller & Co.,* 114 Ill.App.3d 1078, 70 Ill.Dec. 646, 449 N.E.2d 993 (1983) (holder of perfected security interest who acted in bad faith is not good-faith purchaser for value and loses priority over unpaid cash-seller); *Dick Hatfield Chevrolet, Inc. v. Bob Watson Motors, Inc.,* 238 Kan. 41, 708 P.2d 494 (1985) (same).

The Uniform Commercial Code does afford protection to the cash-seller. In this instance, B & J could have had its interest conspicuously noted on the brand inspection certificate pursuant to § 4–2–403(1.5), or it could have obtained and perfected a purchase money security interest pursuant to § 4–9–102(1)(a), C.R.S. (1992 Repl.Vol. 2). In addition, of course, B & J could have demanded payment in cash or its equivalent before shipping the cattle. B & J, however, did not avail itself of any of the protection available to it.

Therefore, we conclude MRC's interest in the heifers was sufficient to allow Cooperative's perfected security interest in after-acquired property to attach thereto, and the trial court correctly concluded this security interest takes priority over B & J's interest as an unpaid cash-seller.

Judgment affirmed.

HUME and ROTHENBERG, JJ., concur.