*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 12a0178p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

    *v.*

No. 10-2071

HUNTINGTON NATIONAL BANK,
    *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 06-00290—Robert Holmes Bell, District Judge.

Argued: March 8, 2012

Decided and Filed: June 14, 2012

Before: CLAY and GIBBONS, Circuit Judges; KORMAN, District Judge.[*]

_____

**COUNSEL**

_____

**ARGUED:** Jeffrey O. Birkhold, WARNER NORCROSS & JUDD LLP, Grand Rapids, Michigan, for Appellant. Joel S. Fauson, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Jeffrey O. Birkhold, Gaëtan Gerville-Réache, WARNER NORCROSS & JUDD LLP, Grand Rapids, Michigan, for Appellant. Joel S. Fauson, Matthew G. Borgula, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

_____

**OPINION**

_____

JULIA SMITH GIBBONS, Circuit Judge. Defendant-appellant Huntington National Bank ("Huntington") claims that it is entitled to the proceeds of a deposit

---

[*] The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

1

account, which were seized by the government as part of a criminal forfeiture proceeding, as a secured creditor of the account. Huntington asserts that it qualifies as a *bona fide* purchaser for value under 21 U.S.C. § 853(n)(6)(B) and appeals the district court's ruling that, as a matter of law, it did not. For the reasons that follow, we reverse the judgment of the district court and direct the district court to amend the order of forfeiture in accordance with this analysis.

I.

This criminal forfeiture proceeding arises out of the activities of a business, known variously as Cybernet Engineering, Cyberco Holdings, and CyberNET (collectively "Cyberco"), whose principals engaged in a complex scheme to defraud dozens of lending institutions out of more than $100 million in loans and lines of credit. In October 2002, Huntington granted Cyberco a multi-million-dollar line of credit, and in exchange Cyberco granted Huntington "a continuing security interest and lien" in all of Cyberco's tangible and intangible personal property and rights, including "deposit accounts." In November 2004, after discovering the fraud, the government seized approximately $4 million in Cyberco assets, including $705,168.60 from Huntington Bank Account Number 01159630935 ("the Cyberco Account").

A number of Cyberco principals were charged in a criminal indictment with conspiring to commit acts which violated federal laws relating to bank fraud, mail fraud, and money laundering. Count 10 of the superseding indictment issued forfeiture allegations against defendants Krista L. Kotlarz Watson and Paul Nathan Wright regarding certain Cyberco assets, including the Cyberco Account. In their respective plea agreements, Watson and Wright agreed to forfeit to the United States any interest they possessed in the assets or funds identified in Count 10 of the superseding indictment. On September 24, 2007, the district court entered a preliminary order of forfeiture with regard to these assets, including the Cyberco Account. The district court further ordered that notice of the forfeiture be published in accordance with 21 U.S.C. § 853(n)(1).

On December 10, 2007, having received notice of the criminal forfeiture action, Huntington filed a verified petition of claim, asserting that it had a right to, and a direct ownership interest in, a portion of the forfeited property—namely, the funds in the Cyberco Account.  Huntington claimed that, at that time it filed the petition, Cyberco remained indebted to Huntington in the amount of $926,162.57, that Cyberco had defaulted on its obligations to Huntington by providing Huntington with fraudulent financial statements and by failing to make payments as required, and that Huntington was entitled to the funds in the Cyberco Account pursuant to its security agreement with Cyberco.  After holding a hearing on the third-party interests asserted in the forfeited property, the district court found that Huntington did not have a legal right, title, or interest that rendered the order of forfeiture invalid in whole or in part under 21 U.S.C. § 853(n)(6)(A).  The district court then entered a final order of forfeiture, forfeiting all the assets listed in Count 10 of the superseding indictment—including the Cyberco Account—to the United States as having been derived from the proceeds obtained directly or indirectly as a result of mail fraud, and/or bank fraud, or a conspiracy to commit such offenses.

Huntington then filed a motion to alter or amend the judgment requesting that the district court modify its opinion and order and grant its petition for claim, arguing that it was entitled to relief under 21 U.S.C. § 853(n)(6)(B) because it was a *bona fide* purchaser for value ("BFP") of its security interest in the funds in the Cyberco account.  The district court denied the motion, finding that Huntington had waived its *bona fide* purchaser argument by failing to raise it earlier.  Huntington appealed this ruling, and this court found that Huntington had not waived the argument and remanded the issue so that the district court could consider the merits of Huntington's claim that it qualified as a BFP under § 853(n)(6)(B).  *United States v. Huntington Nat'l Bank*, 574 F.3d 329, 334 (6th Cir. 2009).

On remand, the district court reached the merits of Huntington's § 853(n)(6)(B) argument and again denied Huntington's claim.  It noted that the term "*bona fide* purchasers" was a legal term of art and that it should not be given an unnatural meaning

for the purpose of 21 U.S.C. § 853(n)(6)(B).  The district court further noted that BFP terminology is not found in Article 9 of the Uniform Commercial Code ("UCC")—the article which governs Huntington's rights as a secured creditor.  Finally, after finding the cases that Huntington relied upon in arguing that it was a BFP distinguishable because they involved security interests in real estate or tangible personal property, the district court "decline[d] to broaden the narrow class of parties Congress intended to protect in § 853(n)(6)(B) by unnaturally extending the [BFP] exception to include intangible deposit accounts."  It held that Huntington was not a *bona fide* purchaser for value of the Cyberco Account and reaffirmed the final order of forfeiture and the order denying Huntington's motion for reconsideration.

II.

Huntington appeals the district court's ruling that, as a matter of law, the BFP exception to criminal forfeiture in 21 U.S.C. § 853(n)(6)(B) does not apply to its secured interest in the Cyberco Account.  This issue is a question of law that this court reviews *de novo.  United States v. Harris*, 246 F.3d 566, 570 (6th Cir. 2001).

Huntington argues that because it purchased a valid security interest in all of Cyberco's assets by extending a line of credit and loans to Cyberco and because it was unaware of Cyberco's fraud until the funds in the Cyberco Account were seized, Huntington is a BFP of this security interest in the Cyberco Account under § 853(n)(6)(B).  Huntington asserts it is therefore entitled to the return of the forfeited Cyberco Account proceeds.

The criminal forfeiture statute provides that all right, title, and interest in property subject to forfeiture "vests in the United States upon the commission of the act giving rise to forfeiture under this section."  21 U.S.C. § 853(c).  Thus, "[a]fter the commission of the criminal acts, title to the forfeitable property, by operation of the relation-back clause, actually belongs to the government."  *Harris*, 264 F.3d at 575 (quoting *United States v. Lavin*, 942 F.2d 177, 186 (3d Cir. 1991)).  Congress, however, carved out two exceptions to this relation-back clause in 21 U.S.C. § 853(n) to protect the rights of certain innocent third parties.  *See id.* at 574.  These exceptions ensure that through the

relation-back doctrine, "the government steps into the shoes of the defendant acquiring only the rights of the defendant at the time of the criminal acts, and nothing more." *Id.* at 575–76 (citing *Lavin*, 942 F.2d at 185–86).

At issue in this case is the second of these exceptions, which provides that property cannot be forfeited if "the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section." 21 U.S.C. § 853(n)(6)(B). This *bona fide* purchaser exception protects a third party who acquires a legal interest in property for value *after* the acts giving rise to the forfeiture have occurred and who had no reason to believe that the property was subject to forfeiture. *See Harris*, 264 F.3d at 574–75.

Federal law controls whether a party qualifies as a BFP under 21 U.S.C. § 853(n)(6)(B). *Id*. at 571 (holding that "this issue [of whether a lienholder claimant of prepayment premiums qualifies as a BFP under § 853(n)(6)(B)] is ultimately one of federal law"); *see also United States v. Timley*, 507 F.3d 1125, 1130 (8th Cir. 2007) ("If a court determines the claimant has an interest in the property under the law of the jurisdiction that created the property right, then . . . it must next look to federal law, *i.e.*, to 21 U.S.C. § 853(n)(6), to determine if the claimant will prevail in the ancillary proceeding."). Although this court has cautioned that the term "bona fide purchaser for value" in subsection (n)(6)(B) should not be given an "unnatural meaning," the statute itself requires that the term be liberally construed. 21 U.S.C § 853(o) ("The provisions of this section shall be liberally construed to effectuate its remedial purposes."); *United States v. Campos*, 859 F.2d 1233, 1237–38 (6th Cir. 1988) (holding that while the statute should be liberally construed, it would give the phrase "bona fide purchasers" an unnatural meaning to include unsecured creditors, since such creditors do not fit within the traditional definition of the term). Finally, we have noted that the *bona fide* purchaser exception is derived "essentially from hornbook commercial law" and reflects the common-law rule that an "'innocent purchaser for valuable consideration must be protected.'" *Harris*, 246 F.3d at 575 (quoting *Lavin*, 942 F.2d at 185–86).

Huntington argues that it is well established that one who takes a security interest in property in exchange for antecedent debt, as Huntington did, can be a BFP of that property interest. The bank is correct. Section 853(b) defines the term "property" to include "rights, privileges, *interests*, claims, and securities." 21 U.S.C § 853(b)(2) (emphasis added). Because a security interest is a type of specific "interest" in property, the purchaser of a security interest could potentially qualify as a BFP under the statute. *See United States v. Reckmeyer*, 836 F.2d 200, 206 n.3 (4th Cir. 1987) (contrasting general creditors, who "cannot point to any one specific asset and claim that they are entitled to payment out of the value of that specific asset" with secured creditors, who do have an interest in a specific asset).

Furthermore, while we held in *Campos* that unsecured creditors are not permitted to assert claims under 21 U.S.C. § 853(n)(6)(B), we also stated that the criminal forfeiture statute gives "a party with a *secured interest* an opportunity to be heard." *Campos*, 859 F.2d at 1238 (emphasis added). A number of other courts have also recognized the principle that a secured party can be a BFP. *See, e.g., United States v. Frykholm*, 362 F.3d 413, 416 (7th Cir. 2004) (finding that it was sensible for the United States not to pursue the question of "whether the holder of a security interest [in real estate] given in exchange for an antecedent debt can be a bona fide purchaser for value"); *Genesee Merchs. Bank & Trust Co. v. Tucker Motor Sales*, 372 N.W.2d 546, 548–49 (Mich. Ct. App. 1985) (holding that under Michigan law, "[t]he term 'purchaser' includes not only those who take by sale but also those who, like the bank here, take by lien" and that "the antecedent indebtedness [through a financing arrangment] of [the defaulted automobile dealership] to the bank was 'value' sufficient to render the bank a good faith purchaser *for value*").

The government maintains, however, that creditors cannot be *bona fide* purchasers under the BFP exception to the forfeiture statute, primarily relying upon *United States v. BCCI Holdings (Luxembourg), S.A.*, 961 F. Supp. 287 (D.D.C. 1997). In *BCCI Holdings*, American Express attempted to protect its approximately $23 million "right of setoff" from forfeiture by claiming to be a *bona fide* purchaser. 961 F. Supp.

at 290–91.  The *BCCI Holdings* court rejected this theory, finding that there had been no purchase because the "assertion of a state law right of set off . . . is both functionally and legally different from the purchase of a tangible asset."  *Id*. at 295.  This court has explained that "[t]he right to setoff is a widely recognized common law right which allows entities that owe each other money to apply their mutual debts against each other."  *In re Gordon Sel-Way, Inc.*, 270 F.3d 280, 290 (6th Cir. 2001).  The government argues that a security interest and the right of setoff are functionally the same.

Contrary to the government's argument, however, a right of setoff and a security interest are distinct, since a security interest is a property interest while a right of setoff is not.  *See* 1-3 Julian B. McDonnell, *The Scope of Article 9*, in *Secured Transactions Under the Uniform Commercial Code* § 3.15 (Matthew Bender 2012) ("Unlike a security interest, the set-off does not involve an interest in the property of the debtor.").  Moreover, as the *BCCI Holdings* court explained, "[t]he *res* at issue is not the money that was the subject of the loan or the currency transactions, but the right for American Express Bank to take a credit for debts owed arising from the loan default and the incomplete currency transactions." 961 F. Supp. at 295.

The government also argues that because the right of a secured creditor to appropriate the secured property typically vests upon default (as was the case in Huntington's security agreement) and because nothing of additional value is given at that time, the secured party is not a "purchaser" and thus cannot be a BFP.  The government is essentially asserting through this argument that a secured creditor typically should be treated the same as an unsecured creditor under the criminal forfeiture statute.  *Campos*, however, undermines the government's argument.  *Campos* clearly distinguished secured creditors from unsecured creditors when determining what groups are permitted to assert claims under § 853(n)(6)(B).  859 F.2d at 1238.

The government's position that creditors cannot be *bona fide* purchasers under the BFP exception to the forfeiture statute is without merit.  Because Huntington had, through its security agreement with Cyberco, a secured interest in the forfeited property

and not simply a common-law or statutory right of setoff, Huntington is eligible to claim protection under the BFP exception of § 853(n)(6)(B).

Further, the distinction between interests in tangible property versus intangible property that was drawn by the district court, and is now relied upon by the government, is not supported by the statutory language or by precedent. The forfeiture statute expressly defines the meaning of the term "property" to include real property as well as "tangible and *intangible* personal property, including rights, privileges, interests, claims, and securities." 21 U.S.C. § 853(b) (emphasis added). Subsection 853(c) then precludes forfeiture when a "transferee establishes in a hearing pursuant to subsection (n) of this section that he is a bona fide purchaser for value of such property." *Id*. at § 853(c). Thus, under the plain meaning of the statute, Congress intended the BFP protections to apply to interests in both tangible and intangible property.

Even if the statute did not so clearly define the meaning of "property" to include intangible personal property, however, the district court still mistakenly found that the inclusion of interests in intangible assets like deposit accounts would be an "unnatural" extension of the BFP exception to the federal forfeiture statute. Again, while the meaning of § 853(n)(6)(B) is governed by federal law, because the BFP exception is derived essentially from hornbook commercial law, it is appropriate for this court to look to state commercial law as persuasive guidance to help discern what Congress intended when it used the term "bona fide purchaser for value" in the federal statute.[1] *Harris*, 246 F.3d at 575. There is an extensive body of case law demonstrating that commercial law has traditionally applied the BFP concept to intangible property, which refutes the district court's determination that it would be unnatural to do so for the purposes of

---

[1] It was also appropriate for the district court to look to Michigan's Uniform Commercial Code for (non-binding) guidance on the question of whether the holder of a security interest can be a BFP under § 853(n)(6)(B). The district court was mistaken, however, when it found that Article 9 of the UCC, which governs Huntington's rights as a secured creditor, does not provide protection for good faith or *bona fide* purchasers for value. Article 9 of the UCC does not use express BFP terminology, but the system of perfection and priority found in Article 9 exemplifies the common law BFP concept. *Cf. Matter of Samuels & Co.*, 526 F.2d 1238, 1243 (5th Cir. 1976) (*en banc* decision adopting prior dissent of J. Godbold with additional comments set out in margin) (stating that "[l]ack of knowledge of outstanding claims is necessary to the common law BFP" and finding that this requirement is expressed in many provisions of the UCC, including the priority provisions found in Article 9).

§ 853(n)(6)(B). *See, e.g., Enochs v. State*, 91 So. 20, 23–24 (Miss. 1922) (Ethridge, J., dissenting) (describing a state inheritance tax that provided "said lien shall not affect any tangible or intangible personal property after it has passed to a bona fide purchaser for value"); *In re Vardaman Shoe Co.*, 52 F. Supp. 562, 565 (E.D. Mo. 1943) (finding that under Missouri law a *bona fide* purchaser of accounts receivable could obtain priority over competing claims to the accounts); *In re Tropicana Graphics, Inc.*, 24 B.R. 381, 384 (Bankr. C.D. Cal. 1982) (finding that a statutory lien under the Internal Revenue Code may be enforceable against a *bona fide* purchaser of a bank account).

Finally, the government also argues that the panel should not expand the BFP exception to include grantees of security interests in intangible deposit accounts because it would render the relation-back doctrine under 21 U.S.C. § 853(c) meaningless. The government's argument fails to appreciate the fact that the whole purpose of 21 U.S.C. § 853(n)(6)(B) is to protect innocent purchasers who acquire property without notice of the government's superior interest—acquired through the operation of the relation-back doctrine—in the forfeited property. The government claims that an expansion of the exception would allow a holder of a security interest to always defeat the government's forfeiture, no matter when its right to the property under the security vested. This is plainly incorrect. The BFP exception protects only innocent purchasers, and simply because the grant of a security interest in a deposit account constitutes a purchase does not mean that the purchase was innocent. The relation-back doctrine would not be rendered meaningless. Additionally, even if this argument had any merit, it would apply with equal force to tangible property. The government provides no rationale for this court to distinguish between tangible and intangible property when construing the extent of the BFP exception.

In sum, a party who takes a security interest in property, tangible or intangible, in exchange for value, can be a BFP of that property interest under § 853(n)(6)(B).

III.

Having established that Huntington, as holder of a security interest in the Cyberco Account, is eligible to qualify for the BFP exception under the criminal forfeiture statute, we now turn to the question of whether Huntington actually qualifies as a *bona fide* purchaser for value under the § 853(n)(6)(B). Huntington asserts that it purchased its security interest in the Cyberco Account for value and was ignorant of the potential forfeiture of the Cyberco Account. Accordingly, Huntington argues that it is a BFP of its security interest in the Cyberco Account, and because Cyberco owed Huntington more than the value of the Cyberco Account, its interest attached to the entire proceeds of the account.

The government advances two arguments that challenge Huntington's right to the proceeds from the Cyberco Account and Huntington's status as a BFP. The government first contends that even if Huntington purchased a security interest in the Cyberco Account, that interest did not extend to the funds contained within the account. This argument is without merit for a number of reasons. First, the security agreement gave Huntington a broad security interest in "all tangible and intangible property and rights in which a security interest or lien may be taken," which would include the Cyberco Account funds. Moreover, while federal law governs the question of whether Huntington's security interest qualifies under 21 U.S.C. § 853(n)(6)(B), the nature and extent of Huntington's property interest in the Cyberco Account are governed by Michigan law. *See Harris*, 246 F.3d at 571. This means that the cases cited by the government that distinguish a security interest in a deposit account from an interest in the funds contained within that account—all applying law from jurisdictions other than Michigan—are inapposite. Finally, in an adversary proceeding brought by the bankruptcy trustee against Huntington, the bankruptcy court held that Huntington's security interest attached to the deposited funds. *In re CyberCo Holdings, Inc.*, 382 B.R. 118, 122, 134 (Bankr. W.D. Mich. 2008). The district court adopted this holding as well. We decline to disturb these rulings and find that Huntington's security interest extended to the funds contained within the Cyberco Account.

In its second argument, the government contests Huntington's assertion that the government has already stipulated to Huntington's *bona fides* and argues that remand is necessary because Huntington has never established it was actually a *bona fide* purchaser. Huntington maintains that the government has already stipulated that Huntington was an innocent purchaser and that the bank had no knowledge of Cyberco's fraud or the potential forfeiture of the Cyberco account. The government argues that it never made a statement that would serve as a deliberate waiver of its right to put on evidence to contest whether Huntington was *bona fide*. *See MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 340 (6th Cir. 1997) ("In order to qualify as judicial admissions, an attorney's statements must be deliberate, clear and unambiguous.") (citation omitted).

At the forfeiture hearing held on January 10, 2008, however, the government stated that none of the claimants, including Huntington, "were complicitous in any way in the fraud" and that the claimants had "no knowledge of the fraud." Additionally, in the previous appeal of this case, this court found that it made no difference that Huntington had not addressed the issue of whether it had cause to believe that the property was subject to forfeiture because "the government conceded in its pre-hearing brief that 'all of the claimants were unaware of the criminal activity.'" *Huntington Nat'l Bank*, 574 F.3d at 333. We further stated that "[t]he government, indeed, conceded away the only issue on which such testimony or evidence could have been relevant here: whether Huntington had 'cause to believe that the property was subject to forfeiture.' 21 U.S.C. § 853(n)(6)(B)." *Id.* Thus, we have clearly already found that the government has conceded away this issue, and the government should not now be allowed to recant its prior stipulation. *See Estate of Quirk v. Comm'r of Internal Revenue*, 928 F.2d 751, 759 (6th Cir. 1991) (finding that in the absence of any exceptional circumstances, parties should not be allowed to challenge their prior stipulations, as this would strip such stipulations of much of their purpose).

Accordingly, we find that because Huntington purchased its security interest in the Cyberco Account for valuable consideration—in the form of loans and a line of credit—and had no cause to believe that the Cyberco Account was subject to forfeiture,

Huntington is entitled to the protections of 21 U.S.C. §§ 853(c) and (n)(6)(B) as a *bona fide* purchaser for value.

IV.

For the reasons provided above, we reverse the ruling of the district court and direct the district court to amend the order of forfeiture in accordance with this analysis. Further, having held the government to its prior stipulation to Huntington's status as an innocent purchaser, we also dismiss Huntington's motion to strike the government's Rule 28(j) letter as moot.