NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0474n.06

No. 15-3932

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | **FILED** |
| v. | ) | Aug 16, 2016 |
| | ) | DEBORAH S. HUNT, Clerk |
| GLEN GALEMMO, | ) | |
| | ) | ON APPEAL FROM THE |
| Defendant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| and | ) | DISTRICT OF OHIO |
| | ) | |
| KRISTINE GALEMMO, | ) | |
| | ) | |
| Movant-Appellant. | ) | |

**BEFORE:** MOORE, GIBBONS, and DAVIS[*], Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** While Glen Galemmo was under investigation for a Ponzi scheme and the government had begun seizing his assets, he transferred 30 units in Rugged Power Investments (RPI) to his wife, Kristine Galemmo. Mr. Galemmo had purchased these units using proceeds from his fraud. The RPI membership agreement included a provision that gave shareholders the right to buy additional units if the partnership decided to raise capital by issuing new shares. Mrs. Galemmo, with funds provided by her father-in-law, used these preemptive rights to buy 15 additional units of RPI.

---

[*]The Honorable Andre Davis, Senior United States Circuit Judge for the United States Court of Appeals for the Fourth Circuit, sitting by designation.

- 1 -

After the district court issued a preliminary order of forfeiture for all 45 units of RPI and their associated distributions, the government and Mrs. Galemmo cross-moved for summary judgment. The district court granted the government's motion as to the 45 shares, finding that the original 30 units related back to the government as the proceeds of fraud. The district court also held that the additional 15 units, procured through shareholder rights that belonged to the government through the relation-back doctrine, related back to the government. Mrs. Galemmo now appeals the district court's order as to the 15 units and their distributions. Because Mrs. Galemmo lacks superior title to the 15 units and is not a bona fide purchaser for value, we affirm.

**I.**

The relevant facts are not in dispute. Glen Galemmo pled guilty to wire fraud, in violation of 18 U.S.C. § 1343, and money laundering, in violation of 18 U.S.C. § 1956, and as part of that agreement, the district court ordered him to forfeit certain property. That property included "45 units or shares of Rugged Power Investments, LLC ("RPI") currently issued to Kristine Galemmo." The court had previously entered a preliminary order of forfeiture of these 45 shares and the profits due to Mrs. Galemmo as a result of her membership interest in RPI.

Mr. Galemmo and two partners founded RPI in May 2013. PSIF, LLC, a company Mr. Galemmo formed and of which he was the sole member, purchased 30 membership units of RPI, giving him a 30% ownership interest in the company. Mr. Galemmo, through PSIF, bought the 30 units of RPI using proceeds from his fraud. PSIF transferred its shares in RPI to Mrs. Galemmo on July 7, 2013, a few days after a magistrate judge signed a warrant authorizing the seizure of funds in Mr. Galemmo's bank accounts.

The RPI partnership agreement included a provision that gave unit holders the right to buy additional units if the partnership decided to raise capital by issuing new shares. In

November 2013, RPI decided to raise new capital, and pursuant to the shareholder rights provision in the partnership agreement, Mrs. Galemmo purchased 15 additional units in order to maintain her 30% interest in RPI, giving her a total of 45 shares in RPI. She bought the additional shares using funds she obtained from her father-in-law.

Mrs. Galemmo challenged the forfeiture of the 45 RPI shares and the related distributions, arguing that she is the owner of the RPI units and a bona fide purchaser of 15 of the shares. After discovery, Mrs. Galemmo and the government cross-moved for summary judgment.

The district court held that title to the original 30 shares of RPI and their distributions relate back to the government. It also held that Mrs. Galemmo did not establish superior title to the 15 units or her status as a bona fida purchaser for value. On the question of superior title, the court reasoned that because title to the 30 units and their attendant rights relate back to the government, Mrs. Galemmo never had the right to purchase the additional 15 units under the partnership agreement. Similarly, Mrs. Galemmo was not a bona fide purchaser for value because, although she did give value for the shares, she had reason to believe that they were subject to forfeiture. The court pointed to a number of facts in the record to support this conclusion: (1) the provision in the assignment agreement that it would be deemed null and void if the government demanded a reversal of the assignment of the 30 shares to Mrs. Galemmo; (2) Mr. Galemmo's contemporaneous transfer of other assets into Mrs. Galemmo's name; (3) Mrs. Galemmo's opening and closing of bank accounts and moving money in and out of them; (4) Mrs. Galemmo's admission that she was concerned about the government seizing her husband's assets.

**II.**

Mrs. Galemmo appeals the district court's ruling that, as a matter of law, she lacked superior title to the 15 units of RPI and their associated distributions and was not a bona fide purchaser for value under 21 U.S.C. § 853(n)(6). She argues that because she bought the 15 shares with innocent funds and had no reason to believe they would be subject to forfeiture when she made the purchase, § 853(n)(6)'s exceptions to the criminal forfeiture statute apply. We review a district court's grant of summary judgment in a forfeiture case *de novo*, viewing all facts in the light most favorable to the non-movant. *United States v. $5000.00 in U.S. Currency*, 40 F.3d 846, 848 (6th Cir. 1994).

The criminal forfeiture statute defines "property" broadly as including "tangible and intangible personal property, including rights, privileges, interests, claims, and securities." 21 U.S.C. § 853(b). The statute provides that all right, title, and interest in property subject to forfeiture "vests in the United States upon the commission of the act giving rise to forfeiture under this section." *Id.* § 853(c). This means that "[a]fter the commission of the criminal acts, title to the forfeitable property, by operation of the relation-back clause, actually belongs to the government." *United States v. Huntington Nat. Bank*, 682 F.3d 429, 433 (6th Cir. 2012) (quoting *United States v. Harris*, 246 F.3d 566, 575 (6th Cir. 2001)).

Two exceptions to the relation-back clause protect certain innocent third parties. *Id.* A third party can obtain relief from forfeiture if she establishes by a preponderance of the evidence that she has an interest in the forfeitable property that is "superior" to that of the government or that she was a "bona fide purchaser for value." 21 U.S.C. § 853(n)(6); *United States v. Huntington Nat. Bank*, 574 F.3d 329, 330 (6th Cir. 2009) (citation omitted). Mrs. Galemmo

argues that both the superior interest and bona fide purchaser exceptions apply to the 15 units of RPI.

**A.**

To obtain relief under the superior title exception, Mrs. Galemmo must show that her interest in the property is superior to the government's interest at the time of the commission of the act giving rise to the forfeiture, the moment when the government "step[ped] into [Mr. Galemmo's] shoes." *Harris*, 246 F.3d at 575 (quoting *United States v. Lavin*, 942 F.3d 177, 185–86 (3d Cir. 1991)); *see* 21 U.S.C. § 853(n)(6)(A). She cannot make this showing.

Under the relation-back doctrine, the government acquired its interest in the original 30 units of RPI when Mr. Galemmo used proceeds from his fraud to establish RPI in May 2013. 21 U.S.C. § 853(c). Thus, the government stepped into Mr. Galemmo's shoes as soon as he obtained these shares, which necessarily predated his transfer of them to Mrs. Galemmo. When the government obtained title to the original 30 shares, it also gained all of the ownership rights that came with those shares, including the right to purchase additional units. Under Ohio law, which determines the nature of the property interests here, and the broad definition of "property" in the criminal forfeiture statute, preemptive rights are a property interest. 21 U.S.C. § 853(b) (defining property as "including rights, privileges, interests, claims, and securities"); *Harris*, 246 F.3d at 571 (noting that state law determines the nature of property interests in federal forfeiture proceedings); *see Schafer v. Deszcz*, 698 N.E.2d 60, 62 (Ohio Ct. App. 1997) (observing, in the real property context, that preemptive rights are property interests). Mrs. Galemmo exercised these preemptive rights in purchasing the additional 15 units, but these rights

belonged to the government, not her. She thus cannot establish superior title to these units because she did not have the right to buy them.[1]

**B.**

To prove she is a bona fide purchaser for value, Mrs. Galemmo must show two things: (1) she is a "bona fide purchaser for value of the . . . interest in the property"; and (2) the interest was acquired at a time when the claimant was "reasonably without cause to believe that the property was subject to forfeiture." 21 U.S.C. § 853(n)(6)(B); *Groza-Vance v. Vance*, 834 N.E.2d 15, 28 (Ohio Ct. App. 2005). With regard to the second prong, the relevant question "is not whether the petitioner *actually* believed that the property was subject to forfeiture." *United States v. Coffman*, 612 F. App'x 278, 287 (6th Cir. 2015). Mrs. Galemmo cannot show by a preponderance of the evidence that she was reasonably without cause to believe that the 15 shares were subject to forfeiture, and for that reason, we do not address the first prong.

In *Coffman*, we found that a claimant company had not established by a preponderance that it was reasonably without cause to believe a yacht was subject to forfeiture. *Id.* We considered "the red flags around [the defendant's] financial status" at the time of the purchase, including a subpoena of his financial records and the transfer of jointly held property into his spouse's sole possession. *Id.* We also noted the unusual circumstances regarding how the funds for the yacht were obtained. *Id.*

Here, though the funds for the purchase of the 15 RPI units came from Mrs. Galemmo's father-in-law, she still had cause to believe that these shares were subject to forfeiture. As in *Coffman*, it was clear that Mr. Galemmo was under investigation, as many assets had already been seized, including Mrs. Galemmo's bank accounts. Mr. Galemmo also transferred vehicles

---

[1] As the district court noted, the $45,000 Mrs. Galemmo borrowed to purchase the additional 15 RPI units is not subject to forfeiture.

titled in his name to Mrs. Galemmo. Finally, Mrs. Galemmo indicated her awareness of the "red flags" around her husband's financial status by opening and closing new bank accounts, moving funds back and forth between these accounts, and requesting that RPI put the units from Mr. Galemmo in the name of a trust. Though Mrs. Galemmo's affidavit asserts that she "did not believe, nor did [she] have reason to believe, that the 15 units of RPI [she] purchased would be subject to forfeiture," the relevant standard is not actual knowledge. *Coffman*, 612 F. App'x at 287. Rather, Mrs. Galemmo must show by a preponderance of the evidence that she was "reasonably without cause" to believe the 15 units would be subject to forfeiture at the time she purchased them. 21 U.S.C. § 853(n)(6)(B). Because of the red flags around the Galemmos' finances, Mrs. Galemmo had reason to believe the 15 RPI units were subject to forfeiture, and she cannot qualify as a bona fide purchaser for value.

## C.

The concurring opinion raises a number of potentially valid points but addresses arguments that Mrs. Galemmo has not made and to which the government has not responded. Given this situation, we choose not to wade into the concurring opinion's observations about the case.

## III.

For the foregoing reasons, we affirm the district court's grant of summary judgment to the government regarding the 15 units of RPI and the related distributions.

**KAREN NELSON MOORE, Circuit Judge, concurring in the judgment**. Kristine Galemmo apparently helped her husband, Glen, hide assets that he obtained through a massive Ponzi scheme. Glen Galemmo was later charged with various crimes related to that scheme, and, since his guilty plea, many of his assets have been forfeited to the government. This appeal, arising out of the forfeiture proceedings that followed Glen Galemmo's guilty plea, does not relate to any of that property. Instead, it addresses the status of 15 shares in Rugged Power Investments that Kristine Galemmo obtained on her own using money that apparently was *not* obtained through the Ponzi scheme. Glen Galemmo never owned the 15 shares. Indeed, the only relation that the 15 shares have to him is that Kristine Galemmo was able to purchase them solely because she was a preexisting owner of Rugged Power by virtue of 30 shares that had been purchased by her husband using proceeds of his fraud and that he subsequently transferred to her.

To obtain forfeiture of the 15 shares, the government commenced the first step of a forfeiture proceeding—the preliminary-order stage, when the government seeks entry of a preliminary order of forfeiture in proceedings that cannot involve anyone but the government and the criminal defendant and during which the court cannot consider the property rights of any third party. *See* 21 U.S.C. § 853(k); Fed. R. Crim. P. 32.2(b)(2)(A). At this stage, the court is tasked with "determin[ing] what property is subject to forfeiture under the applicable statute," Fed. R. Crim. P. 32.2(b)(1)(A), which in this case meant determining what property "constitut[ed], or [was] derived from, any proceeds [Glen Galemmo] obtained, directly or indirectly, as the result of" his offenses of conviction, 21 U.S.C. § 853(a)(1). The district court did just this in entering a preliminary order of forfeiture, but did not explain why it found that the

15 shares were "proceeds" of Glen Galemmo's crimes. *See* R. 63 (Third Preliminary Order of Forfeiture at 2) (Page ID #561).

Kristine Galemmo became involved at the second step to a forfeiture proceeding—the final-order stage, when any third party claiming a legal interest in the property "may . . . petition the court for a hearing to adjudicate the validity of [her] alleged interest in the property." 21 U.S.C. § 853(n)(2). At this stage, the district court compares the claimant's interest in the property to that of the government, and for this purpose, the government is considered to have stepped into the shoes of the criminal defendant "upon the commission of the act giving rise to forfeiture." 21 U.S.C. § 853(c). A claimant may prevail at this stage only if:

> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;

21 U.S.C. § 853(n)(6).

The district court granted summary judgment to the government—and thus forfeiture of the 15 shares—after finding that neither exception applied to Kristine Galemmo's claim. I agree with the district court and the Majority that neither exception applies, but, as explained in Part I below, my reasons for this conclusion differ. Kristine Galemmo neither claims an interest in forfeitable property that predates and trumps that of her husband, as is required for the superior-interest exception, nor asserts that she bought property from her husband not knowing that it would be forfeited, as the bona-fide-purchaser exception requires. She therefore cannot avail herself of either exception. Kristine Galemmo's arguments drive instead at a different point—

that she, not Glen Galemmo or the government, is the actual owner of the 15 shares. *See* Appellant Br. at 11–12; R. 107 (K. Galemmo Sealed Mot. for Summ. J. at 9–12) (Page ID #1184–87); R. 114 (Gov't Sealed Opp'n to K. Galemmo Mot. for Summ. J. at 7–8) (Page ID #2210–11). Absent our Circuit's recent decision in *United States v. Fabian*, 764 F.3d 636 (6th Cir. 2014), Kristine Galemmo would have been free to point this argument at its true target—the district court's antecedent finding that the 15 shares were forfeitable as "proceeds" of Glen Galemmo's offense. Because that prior decision binds us, I agree that we must affirm the grant of summary judgment to the government. As I explain in Part II, we may need to consider, in an appropriate case, whether *Fabian* was wrong insofar as it left claimants like Kristine Galemmo— who claim to be the actual owners of property wrongly found to be subject to criminal forfeiture—unable ever to raise legal arguments regarding their entitlement to the property.

## I. SUMMARY JUDGMENT WAS APPROPRIATELY GRANTED TO THE GOVERNMENT.

### A. Kristine Galemmo Does Not Qualify Under the Superior-Interest Exception.

The Majority holds that Kristine Galemmo does not qualify for the exception for vested or superior legal interests because a non-dilution provision inherent in the original 30 shares, which allowed her to purchase the 15 disputed shares, is itself a property right that relates back to the government under 21 U.S.C. § 853(c). The Majority therefore believes that Kristine Galemmo wrongly usurped the government's non-dilution right in purchasing the 15 shares, and that title to those shares vested in the government as well. I am not so sure. It is one thing to say that the non-dilution right vested in the government upon commission of the offense by Glen Galemmo, so Kristine Galemmo in some metaphysical sense did not have the right to purchase more shares. It is quite another to say that title to the 15 shares purchased pursuant to Kristine Galemmo's usurpation of this right would also relate back to the government, when the shares

came into being only because Kristine Galemmo paid for them—otherwise, presumably, they could have been purchased by a third party against whom the government would have no claim. No one disputes that Glen Galemmo never owned the 15 shares, so it is not as if the government can step into his shoes directly as it can for the other 30 shares. Nor do the parties' arguments make clear whether a usurpation of non-dilution rights would automatically vest title in the party whose rights were usurped. I would avoid this dispute altogether because there is a more fundamental reason why 21 U.S.C. § 853(n)(6)(A) does not apply.

The exception may be satisfied "in two ways: proving that the interest was vested, or proving that the interest was superior." *United States v. Oregon*, 671 F.3d 484, 491 n.11 (4th Cir. 2012). The superior-interest avenue applies only if the superior interest existed "at the time of the commission of the acts which gave rise to the forfeiture . . . ." 21 U.S.C. § 853(n)(6)(A). Although the vested-interest avenue does not contain the same language, courts have interpreted it to require that the vested interest predate the criminal offense as well. *See, e.g.*, *United States v. Watts*, 786 F.3d 152, 166 (2d Cir. 2015) ("The requirement that the petitioner's interest be evaluated 'at the time of the commission of the acts' governs our analyses of both when the property became 'vested in the petitioner' and when the petitioner's interest became 'superior to any . . . interest of the defendant.'" (alteration in original) (quoting 21 U.S.C. § 853(n)(6)(A))); *United States v. Wilson*, 659 F.3d 947, 953 (9th Cir. 2011) ("the interest must have vested to the petitioner, rather than the defendant, at the time the offense occurred").[1] Kristine Galemmo

---

[1] This may not be a hard-and-fast rule where, for example, equitable considerations suggest that a right that vested after the commission of the criminal offense nonetheless existed in some way prior to the offense, such that it can be said to have been untainted by the offense. *See Oregon*, 671 F.3d at 493 n.14 (giving as an example "a teenage beneficiary . . . challenging a forfeiture of a trust set up by a defendant-parent to pay for the beneficiary's college tuition": "That the defendant-parent maintained title over the trust corpus would be only one of many

therefore cannot take advantage of this exception because her interest came into being after the criminal offense occurred.

**B. Kristine Galemmo Does Not Qualify Under the Bona-Fide-Purchaser Exception.**

The Majority holds that Kristine Galemmo does not fall within the exception for bona fide purchasers because she should have known that the 15 shares would be subject to forfeiture. I disagree. The exception applies to one "who had no reason to believe that the property was subject to forfeiture." *United States v. Huntington Nat'l Bank*, 682 F.3d 429, 433 (6th Cir. 2012). This "is an objective, not subjective test," 2 David B. Smith, PROSECUTION AND DEFENSE OF FORFEITURE CASES ¶ 14.08[3][d] (2015), so Kristine Galemmo's declaration asserting her ignorance is irrelevant, Sixth Cir. R. 9 (Galemmo Decl.) (App'x 13). But the test is also property-specific. *See* 21 U.S.C. § 853(n)(6)(B) (the exception applies if the bona fide purchaser "was at the time of purchase reasonably without cause to believe that *the property* was subject to forfeiture") (emphasis added). It is not dispositive that the purchaser had reason to believe that some of a defendant's property would be subject to forfeiture; rather, the issue "turns on knowledge that *specified property* is subject to forfeiture." Smith, *supra*, ¶ 14.08[3][d] (internal quotation marks omitted); *see also United States v. Reckmeyer*, 836 F.2d 200, 204–05 (4th Cir. 1987) (claimant's "admitted knowledge that his sons were under investigation and that some proceeds from the sale of property owned by [one son] had been seized" was not enough where that knowledge "would not necessarily [make one] conclude that all property owned by [the son] was forfeitable").

The facts relied upon by the Majority relate only to other property. The Majority mentions that "many assets had already been seized, including Mrs. Galemmo's bank accounts,"

---

factors a court would consider"). Kristine Galemmo's claim does not appear to be affected by any such considerations.

that "Mr. Galemmo also transferred vehicles titled in his name to Mrs. Galemmo," and that "Mrs. Galemmo indicated her awareness of the 'red flags' around her husband's financial status by opening and closing new bank accounts, moving funds back and forth between these accounts, and requesting that [Rugged Power] put the units from Mr. Galemmo in the name of a trust." Maj. Op. at 7. The sole fact that relates to Rugged Power at all is connected only to the original 30 shares and Kristine Galemmo's request that they be placed in a trust. *See* R. 27-1 (Shorten Decl. ¶ 36) (Page ID #214). But nothing in the record explains how this request is evidence that 15 yet-to-be-created shares would be forfeitable to the government as proceeds of Glen Galemmo's crimes if Kristine Galemmo bought them using apparently untainted money. Kristine Galemmo's background awareness that her husband's assets were being seized certainly plays into the analysis, but it does not alone make the necessary link to the 15 shares at issue because they were purchased with funds that Kristine Galemmo knew were apparently untainted by her husband's crimes. This puts the facts of this case directly at odds with the case cited by the government and the Majority, which involved a yacht that was purchased using money the claimant should have known came from proceeds of the underlying crime. *See United States v. Coffman*, 997 F. Supp. 2d 677, 687–88 (E.D. Ky. 2014), *aff'd* 612 F. App'x 278 (6th Cir.), *cert. denied*, 136 S. Ct. 491 (2015). Thus, the only thing that could have alerted Kristine Galemmo that the 15 shares could be linked to her husband's crimes is the existence of the non-dilution right that was based in the 30 shares that were purchased using proceeds of the fraud. I find it implausible that she would have known that shares she purchased from a third party with apparently untainted funds, at a time when her husband's assets and funds she had obtained *from him* were being forfeited, would nonetheless be considered "proceeds" of his fraud.

I would resolve the applicability of this exception on more fundamental grounds. "[Section] 853(n)(6)(B) provides a narrow exception to [the relation-back doctrine], allowing a limited category of petitioners who 'acquired an interest in the forfeited property *after* the government's interest vested' to prevail at an ancillary hearing." *Watts*, 786 F.3d at 169 (quoting *United States v. Timley*, 507 F.3d 1125, 1130 (8th Cir. 2007)). The idea is that, although title to the property will belong to the government by virtue of the relation-back doctrine, "[t]he property itself . . . generally remains in the criminal defendant's physical possession until the government discovers the criminal acts and takes possession of the forfeitable property," and the defendant may well transfer this property during that time. *United States v. Lavin*, 942 F.2d 177, 186 (3d Cir. 1991). "Section 853(n)(6)(B) ensures that, if indeed the defendant transfers the forfeitable property for value to a purchaser who, at the time of the purchase, is without knowledge of the government's interest in the property, the government may not later assert title superior to that of the innocent purchaser." *Id.* The problem here is that Glen Galemmo *never* had an interest in the 15 shares, so Kristine Galemmo did not purchase the shares from him, and the government's relation-back interest under 21 U.S.C. § 853(c) arose only upon Kristine Galemmo's exercise of the non-dilution rights and purchase of the 15 shares. Kristine Galemmo thus may well have been a bona fide purchaser, but she was not a bona fide purchaser whose interest arose "*after* the government's interest vested." *Watts*, 786 F.3d at 169.

\* \* \*

Kristine Galemmo therefore cannot take advantage of either exception because the point that her arguments are driving at does not fall within the range of situations that the exceptions are intended to cover. Kristine Galemmo is not arguing that she had an interest in the 15 shares that predates her husband's fraud, nor that she bought the 15 shares from her husband after the

fraud. Instead, her true point is that she has an interest in property that is not forfeitable because it is unrelated to her husband—i.e., that the district court's antecedent determination that the 15 shares were forfeitable was erroneous. Although her arguments circle this point repeatedly, she made the contention only vaguely. *See* R. 107 (K. Galemmo Sealed Mot. for Summ. J. at 9–12) (Page ID #1184–87) (suggesting, in a section addressing the superior-interest exception, that Kristine Galemmo had superior ownership rights because title could not have vested in the United States under the relation-back doctrine); Appellant Br. at 11 (citing a decision for the proposition "that when a defendant made two separate stock purchases in the same company, only one of which was made with criminal proceeds, only the stock purchased with criminal proceeds was forfeitable"). Even if the argument had been properly raised, Kristine Galemmo would still lose because, as the government noted, Appellee Br. at 31–32, we recently held that a third party may not "'relitigat[e]' . . . the district court's antecedent determination that an item of property is subject to forfeiture." *Fabian*, 764 F.3d at 638.[2] I therefore agree that we must affirm the district court's grant of summary judgment to the United States.

---

[2]The Majority suggests that I am raising "a number of potentially valid points" that Kristine Galemmo did not make and to which the government has not had an opportunity to respond. *See* Maj. Op. at 7. If this is intended as a reference to the preceding discussion regarding the two § 853(n)(6) exceptions, this is incorrect. I reject the Majority's reasoning as to why Kristine Galemmo cannot avail herself of those exceptions for reasons that are substantially similar to the arguments that she made—arguments the Majority has, in my view, failed persuasively to address. If the Majority means only that my discussion of *Fabian* in the following pages is "potentially valid," but was not developed in the briefs, I agree. As I mention, Kristine Galemmo did not properly raise the issue—although I note that the government *did* bring up *Fabian* before the district court and before us. *See* Appellee Br. at 31–32; R. 114 (Gov't Sealed Opp'n to K. Galemmo Mot. for Summ. J. at 7–8) (Page ID #2210–11). I find it necessary to discuss *Fabian* because its application to this case illustrates broad concerns that I have with its effect on our forfeiture doctrine, and those concerns explain my earlier point that Kristine Galemmo cannot avail herself of the two § 853(n)(6) exceptions because the point that she is trying to make does not fit within the purpose of either exception.

## II. DUE PROCESS CONCERNS WITH *FABIAN*.

Although we are bound by *Fabian* and Kristine Galemmo has not asked us to distinguish it, I write briefly to express that this case illustrates a potential problem with *Fabian*. Indeed, I attribute the difficulty in assessing Kristine Galemmo's arguments to the fact that she is barred by *Fabian* from placing her arguments within the appropriate doctrine and so must shoehorn them into two inhospitable exceptions when her dispute is with the antecedent finding that the shares are proceeds of the fraud.

*Fabian* justified categorically barring claimants from contesting an antecedent finding of forfeitability by relying on 21 U.S.C. § 853's preclusion of third-party participation at the preliminary-order stage and its allowance of "third party . . . relief on only [the] two grounds" listed in § 853(n)(6). 764 F.3d at 638. I am not convinced that the analysis should have ended there. Under *Fabian*, Kristine Galemmo must accept the district court's unexplained finding that the 15 shares are proceeds of Glen Galemmo's offense, even though that finding arose in proceedings in which she could not participate, where the district court was barred from even considering her potential interest, at a time when her husband had every reason to cooperate with the authorities.[3] This raises significant due process concerns that warrant closer analysis.

There is, in fact, a budding circuit split on this point. The Fourth Circuit has held that "[s]erious due process questions would be raised . . . if third parties asserting an interest in forfeited assets were barred from challenging the validity of the forfeiture." *Reckmeyer*, 836 F.2d at 206. The Fourth Circuit mentioned the Supreme Court's decisions regarding the

---

[3]As noted in a pre-*Fabian* decision, "a criminal defendant may well be motivated to plead guilty to a forfeiture to gain a more favorable plea bargain even if the property does not belong to him." *United States v. Farley*, 919 F. Supp. 276, 278 n.3 (S.D. Ohio 1996). Glen Galemmo may have been motivated to avoid challenging a forfeitability finding regarding the 15 shares because preliminary-forfeiture proceedings regarding those shares occurred before he was sentenced.

application of *res judicata* to those who were not party to the prior proceeding, in which the Supreme Court held that "[i]t is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard." *Id.* (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.7 (1979)).  Similarly, the Fourth Circuit held, "[t]he determination made at the defendant's criminal trial that the property was subject to forfeiture cannot be considered binding on persons who were not only not parties to the criminal action but were specifically barred from intervening."  *Id.*  District courts and commentators have reaffirmed *Reckmeyer*'s position.  *See United States v. Bailey*, 926 F. Supp. 2d 739, 763 (W.D.N.C. 2013); *United States v. Lazarenko*, 504 F. Supp. 2d 791, 795 (N.D. Cal. 2007); Smith, *supra*, ¶ 14.08[4] (noting that "[i]n many cases, a third party does really own the property and the property is not subject to forfeiture; but the third party cannot show that he or she is a [bona-fide purchaser] for roughly equivalent value or that the third party's ownership interest was vested and superior to the defendant's interest 'at the time the property became subject to forfeiture'").  Furthermore, the D.C. Circuit recently suggested that binding a claimant to findings made in preliminary-forfeiture proceedings—in that case a finding that an organization was the alter ego of a criminal defendant—would violate due process.  *See United States v. Emor*, 785 F.3d 671, 677 (D.C. Cir. 2015) ("requiring courts to stick to the pleadings when determining whether a [third-party forfeiture claimant's petition] has failed to state a valid claim for relief . . . fortifies the due process concerns associated with stripping third parties of property rights based on proceedings in which they had no prior opportunity to participate. . . . Thus, to the extent the district court relied on an alter ego finding . . . made during a proceeding in which [the claimant] could not represent its own interests, the court erred.").

Most cases on the other side have not addressed any due process concerns. *See Fabian*, 764 F.3d at 638; *United States v. Holy Land Found. for Relief & Dev.*, 722 F.3d 677, 689–90 (5th Cir. 2013); *United States v. White*, 675 F.3d 1073, 1077–78 (8th Cir. 2012). Two have brushed aside such concerns, relying on a belief that any claimant who could succeed in challenging the preliminary order of forfeiture will also be able to succeed on one or both of the exceptions, making the inability to contest the preliminary order harmless. *See United States v. Davenport*, 668 F.3d 1316, 1321 (11th Cir.) ("[I]f the forfeited property really belongs to the third party, she can prevail and recover her property during the ancillary proceeding."), *cert. denied*, 132 S. Ct. 2731 (2012); *United States v. Andrews*, 530 F.3d 1232, 1236–37 (10th Cir. 2008) ("We agree with the government's explanation: '[I]f the property really belongs to the third party[,] . . . he will prevail and recover his property whether there were defects in the criminal trial or the forfeiture process or not.'" (alterations in original)).[4]

In the normal case, a claimant with a viable objection to a preliminary order of forfeiture would likely also have a viable argument under one of § 853(n)(6)'s exceptions. But not always. As this case demonstrates, some claimants will fall through the cracks. Kristine Galemmo claims a property interest that arose after the crime, and thus is ill-suited to a superior-interest analysis, but which she purchased from entities unrelated to the crime, making the bona-fide-purchaser analysis a poor fit as well. If she is correct that her use of apparently clean funds to purchase the 15 shares severs the tie to Glen Galemmo's offense—an issue on which I express

---

[4]The Second Circuit has determined that a due-process challenge on this point would be unripe because an aggrieved claimant may petition the Attorney General of the United States to exercise her "discretion to 'take any . . . action to protect the rights of innocent persons which is in the interest of justice and which is not inconsistent with the provisions of this section.'" *DSI Assocs. LLC v. United States*, 496 F.3d 175, 186 (2d Cir. 2007) (quoting 21 U.S.C. § 853(i)(1)); *cf. Lavin*, 942 F.2d at 185 ("For the majority of third parties . . . who assert an equitable, rather than a legal, entitlement to relief, petitioning the Attorney General for remission and mitigation remains the exclusive remedy.").

no opinion—then she has a legitimate property interest and no ability to vindicate that interest.

In an appropriate case, we should consider whether this result raises constitutional concerns.